George Teagarden, Livestock Commissioner Kansas Animal Health Department
708 SW Jackson Topeka, Kansas 66603
Dear Commissioner Teagarden:
As Livestock Commissioner you ask whether the Kansas Animal Health Department can enforce a regulation that requires animal breeders to have electricity in their kennels when that requirement conflicts with a breeder's religious practice. You raise this issue in relation to animal breeders who are Old Order Amish and whose religious practice includes rejecting the use of electricity, whether provided by electric power lines or by a generator.
 Requirement to Have Electricity
A Department regulation, K.A.R. 9-19-12, adopts by reference a number of federal regulations, including 9 C.F.R. § 3.1 which addresses requirements for housing facilities for animals maintained by animal breeders and distributors. One provision within that regulation states: *Page 2 
 (d) Water and electric power. The housing facility must have reliable electric power adequate for heating, cooling, ventilation, and lighting, and for carrying out other husbandry requirements in accordance with this subpart. . . .
The purpose of the set of federal regulations concerning animal welfare, of which 9 C.F.R. § 3.1 is a part, is provided by the Congressional statement of policy: "to insure that animals intended . . . for use as pets are provided humane care and treatment," particularly in relation to "housing, care, handling and treatment of animals . . . by persons . . . holding them for sale as pets."[1] This purpose is codified in Kansas regulations governing animal breeders[2] and animal distributors[3] through the adoption of the federal regulations by reference in K.A.R. 9-19-12, as required by K.S.A. 47-1712(b)[4].
Old Order Amish
In a case involving the conflict between compulsory education and the Old Order Amish, the United States Supreme Court discussed the general practices of this religious sect:
 The history of the Amish section [began] with the Swiss Anabaptists of the 16th
century who rejected institutionalized churches and sought to return to the early, simple, Christian life de-emphasizing material success, rejecting the competitive spirit, and seeking to insulate themselves from the modern world. As a result of their common heritage, Old Order Amish communities today are characterized by a fundamental belief that salvation requires life in a church *Page 3 
community separate and apart from the world and worldly influence. This concept of life aloof from the world and its values is central to their faith.
 A related feature of Old Order Amish communities is their devotion to a life in harmony with nature and the soil, as exemplified by the simple life of the early Christian era that continued in America during much of our early national life. Amish beliefs require members of the community to make their living by farming or closely related activities. Broadly speaking, the Old Order Amish religion pervades and determines the entire mode of life of its adherents.[5]
Later, in that same case, the Court acknowledged that the Old Order Amish rejection of telephones, automobiles, radios, and television, their mode of dress, of speech, their habits of manual work set them apart from much of contemporary society, and that these customs are both symbolic and practical.[6] This rejection by Old Order Amish of modern conveniences extends to the use of electricity.[7]
 Free Exercise of Religion
The Department's regulation that requires "reliable electric power" for animal breeder and distributor premises and the Old Order Amish rejection of electricity squarely raises a constitutional issue under the Free Exercise Clause of the First Amendment, which has been made applicable to the States by incorporation into theFourteenth Amendment.[8] This clause guarantees that "Congress shall make no law . . . respecting an establishment of religion, orprohibiting the free exercise thereof . . ."[9] A person's exercise of religion may involve belief and profession, as well as the performance of or abstention from physical acts, [10] such as abstaining from the use of electricity.
However, in addressing conflicts arising under the Free Exercise Clause, the United States Supreme Court has never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting or requiring conduct that the *Page 4 
State is free to regulate. Rather, the Court's decisions "have consistently held that the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."[11] As the 10th
Circuit Court of Appeals framed it, "Neutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice of belief."[12]
A law that is both neutral and generally applicable need only be rationally related to a legitimate governmental purpose to pass constitutional muster. However, if a law that burdens a religious practice is not neutral or generally applicable, it is subject to strict scrutiny, and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling governmental interest.[13]
A law lacks neutrality if it refers to a religious practice without a secular meaning discernable from the language or context, [14] or if the object of a law is to infringe upon or restrict practices because of their religious motivation.[15]
A law is generally applicable as long as it does not provide for exceptions; if a secular exemption exists, however, a challenge by a religious group becomes possible.[16]
The regulation at issue requires animal breeders and distributors to maintain their animal housing facilities with "reliable electric power adequate for heating, cooling, ventilation, and lighting, and for carrying out other husbandry requirements" This regulation's purpose is secular and does not refer to any religious practice discernable in its language or context. The object of the law is to ensure that animals intended to be sold as pets are "provided humane care and treatment," and is not intended to infringe upon or restrict the Old Order Amish religious practice of rejecting the use of electricity. The regulation is thus neutral in its effect. Additionally, the regulation applies to all animal breeders and distributors without exception, and is thus of general applicability. The requirement to have electricity in the animal housing facilities operated by animal breeders and distributors is rationally related to the legitimate governmental purpose of *Page 5 
providing humane care and treatment of the animals and therefore passes constitutional muster under the Free Exercise Clause of theFirst Amendment.
As the United States Supreme Court expressed it:
 Every person cannot be shielded from all the burdens incident to exercising every aspect of the right to practice religious beliefs. When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity.[17]
Accordingly, the Kansas Animal Health Department can enforce a regulation that requires animal breeders to have electricity in their kennels regardless whether this requirement conflicts with a breeder's religious practice.
Sincerely,
 Steve Six Attorney General
 Camille Nohe Assistant Attorney General
SS:MF:CN:jm
[1] 7 U.S.C. § 2131.
[2] "Animal breeder" means any person who operates animal breeder premises." K.S.A. 47-1701(e). "Animal breeder premises" means any premises where all or part of six or more litters of dogs or cats, or both, or 30 or more dogs or cats, or both, are sold, of offered or maintained for sale, primarily at wholesale for resale to another. K.S.A. 47-1701(f).
[3] "Animal distributor" means any person who operates an animal distributor premises. K.S.A. 47-1701(z). "Animal distributor premises" means the premises of any person engaged in the business of buying for resale dogs or cats, or both, as a principal or agent, or who holds such distributor's self out to be so engaged.
[4] "The commissioner shall only adopt as rules and regulations for United States department of agriculture licensed animal distributors and animal breeders, and animal distributor and animal breeder premises the rules and regulations promulgated by the secretary of the United States department of agriculture, cited at 9 C.F.R. 3.1 through 3.12, pursuant to the provisions of the United States public law 91-579 (7 U.S.C. § 2131 et seq.), commonly known as the animal welfare act."
[5] Wisconsin v. Yoder,406 U.S. 205, 209-10, 92 S.Ct. 1526, 1530, 32 L.Ed.2d 15 (1972).
[6] Id., 406 U.S. at 217.
[7] New World Encyclopedia, http://www.newworldencyclopedia.org/entry/Amish.
[8] See Cantwell v. Connecticut,310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).
[9] U.S. Const., Amend. 1 (emphasis added).
[10] Employment Division, Department of Human Resources ofOregon v. Smith,494 U.S. 872, 877, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876 (1990).
[11] Id.at 879.
[12] Grace United Methodist Church v. City of Cheyenne,451 F.3d 643, 649, (10th Cir. 2006) citingEmployment Division, Department of Human Resources of Oregon v.Smith, 494 U.S. at 879.
[13] Id. at 649, citing United States v. Hardman,297 F.3d 1116, 1125 (10th Cir. 2002) and Church ofthe Lukumi Babalu Aye v. City of Hialeah,508 U.S. 520, 546, 133 S. Ct. 2117, 134 L.Ed.2d 471 (1993).
[14] Church of the Lukumi Babalu Aye v. City of Hialeah,508 U.S. at 533.
[15] Id. at 533.
[16] 451 F.3d at 650 citing Church of the Lukumi Babalu Aye v.City of Hialeah, 508 U.S. at 537 and Employment Division,Department of Human Resources of Oregon v. Smith,494 U.S. at 884.
[17] United States v. Lee,455 U.S. 252, 262, 102 S.Ct. 1051, 1057, 71 L.Ed.2d 127 (1982). *Page 1